**IN THE UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF OKLAHOMA**

TONYA DORA, as duly          )
substituted party for         )
Paul Dora, III, deceased,     )
                               )
           Plaintiff,     )
                               )
v.                     )  Case No. CIV-12-155-FHS-KEW
                               )
CAROLYN W. COLVIN, Acting    )
Commissioner of Social       )
Security Administration,      )
                               )
           Defendant.    )

**REPORT AND RECOMMENDATION**

Plaintiff Tonya Dora, as the duly substituted party for Paul Dora, III, deceased (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason

of any medically determinable physical or mental impairment. . ."

42 U.S.C. § 423(d)(1)(A).  A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do

his previous work but cannot, considering his age, education, and

work experience, engage in any other kind of substantial gainful

work which exists in the national economy. . ."   42 U.S.C.

§423(d)(2)(A).  Social Security regulations implement a five-step

sequential process to evaluate a disability claim.  *See*, 20 C.F.R.

§§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited

---

[1]   Step one requires the claimant to establish that he is not
engaged in substantial gainful activity, as defined by 20 C.F.R. §§
404.1510, 416.910.  Step two requires that the claimant establish that
he has a medically severe impairment or combination of impairments that
significantly limit his ability to do basic work activities.  20 C.F.R.
§§ 404.1521, 416.921.  If the claimant is engaged in substantial gainful
activity (step one) or if the claimant's impairment is not medically
severe (step two), disability benefits are denied.  At step three, the
claimant's impairment is compared with certain impairments listed in 20
C.F.R. Pt. 404, Subpt. P, App. 1.  A claimant suffering from a listed
impairment or impairments "medically equivalent" to a listed impairment
is determined to be disabled without further inquiry.  If not, the
evaluation proceeds to step four, where claimant must establish that he
does not retain the residual functional capacity ("RFC") to perform his
past relevant work.  If the claimant's step four burden is met, the
burden shifts to the Commissioner to establish at step five that work
exists in significant numbers in the national economy which the claimant
– taking into account his age, education, work experience, and RFC – can
perform.  Disability benefits are denied if the Commissioner shows that
the impairment which precluded the performance of past relevant work does
not preclude alternative work.  *See generally,* <u>Williams v. Bowen</u>, 844
F.2d 748, 750-51 (10th Cir. 1988).

in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); see also, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on August 12, 1970 and was 40 years old at the time of the ALJ's decision. Claimant completed his high school education through the eleventh grade. Claimant has worked in the

past as an assistant manager and tire repairer.  Claimant alleges
an inability to work beginning August 14, 2010 due to limitations
resulting from mental impairments and back and chest pain.

## Procedural History

On October 22, 2010, Claimant protectively filed for
supplemental security income pursuant to Title XVI (42 U.S.C. §
1381, *et seq.*) of the Social Security Act.  Claimant's application
was denied initially and upon reconsideration.  On June 10, 2011,
an administrative hearing by video was held before ALJ Osly F.
Deramus.  On July 6, 2011, the ALJ issued an unfavorable decision
on Claimant's application.  The Appeals Council denied review of
the ALJ's decision on February 4, 2012.  As a result, the decision
of the ALJ represents the Commissioner's final decision for
purposes of further appeal.  20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential
evaluation.  He determined that while Claimant suffered from severe
impairments, he did not meet a listing and retained the residual
functional capacity ("RFC") to perform a wide range of light work
with limitations.

## Error Alleged for Review

Claimant asserts the ALJ committed error in (1) failing to

consider all of Claimant's severe impairments at step two; (2) engaging in an improper credibility analysis; (3) failing to find Claimant's impairments met or equaled a listing; (4) arriving at an improper RFC; and (5) identifying jobs at step five which Claimant cannot perform.

### Consideration of Additional Severe Impairments

In his decision, the ALJ determined Claimant suffered from the severe impairments of disorders of the back, obesity, and affective mood disorder. (Tr. 33). He also found Claimant retained the RFC to perform light work except that he could only occasionally stoop, climb stairs, and climb ladders. He could perform simple tasks with routine supervision, could relate to supervisors and peers on a superficial work basis but cannot relate to the general public. He could adapt to a work situation. (Tr. 35). After consultation with a vocational expert, the ALJ determined Claimant could perform the representative jobs of cleaner/housekeeper which exists in significant numbers in the regional and national economies. (Tr. 44).

Claimant contends that the ALJ should have included the resulting limitations from a history of surgery for pectus excavatum as a severe impairment. On June 26, 2009, Claimant was admitted to the hospital complaining of acute chest pain. After

ruling out myocardial infarction, the physician recognized Claimant had undergone reconstructive surgery to his sternum from a congenital birth defect when he was three years old which was partly responsible for his pain. The physician also believed the anxiety over finding out Claimant was having a sixth child contributed to the pain. Claimant was discharged to return to his normal routine. (Tr. 283-84). In a follow up visit on June 30, 2009, Claimant still reported chest pain in the left parasternal region, right parasternal, left submammary area, and right submammary area. There was no radiation and episodes lasted from 30 to 45 minutes and occurred at variable frequency. Claimant characterized the pain as moderate in intensity, sharp, and stabbing. The pain was worse in hot weather. Improvement was noted with placing pressure on his chest with his hands. (Tr. 350). Claimant was prescribed medication. (Tr. 351).

On July 14, 2009, Claimant presented once again with chest pain. The discomfort was primarily located in the left parasternal region and right parasternal, radiating to the left upper back and right upper back. The pain seemed to be worse with recumbency. The pain improved with deep breaths, applying pressure to the area that hurts, and lying down, standing and walking. He also experienced nausea and diaphoresis. (Tr. 348). The physician

recommended graduated exercises and stretching, particularly of the chest cavity, and thorax using deep breathing techniques and certain upper body stretches. He also recommended that Claimant change to a less physically demanding job due to his previous chest surgery. (Tr. 349).

On October 12, 2009, Claimant was treated, again complaining of chest pain and pectus excavatum. An MRI showed an area of hypertrophic changes at the level of the lower sternum on the rights side, probably related to a costicartilage junction with the sternum with some cartilage/bony overgrowth as well as a small amount of adjacent soft tissue edema. The physician concluded that Claimant's pectus excavatum repair was successful with no evidence of disorder on the current study. However, at the level of the xiphoid/sternal body junction on the right, there was significant hypertophic change associated with a costosternal junction. He opined that the condition might be related to the old surgery or to incomplete union of costicartilage with the lower sternum. There was also mild edema suggested at the site which might produce a palpable abnormality just to the right of mid line level of the lower sternum. (Tr. 328).

On December 26, 2009, Claimant went to the emergency room and was diagnosed with musculoskeletal chest pain. The pain increased

with a change of position or cough.  He was prescribed Lortab. (Tr. 333-34).

On December 12, 2010, Claimant reported to the emergency room complaining that he felt something tear in his chest with movement. Claimant was prescribed medication for the condition.  (Tr. 408-09).

The ALJ concluded Claimant's surgery to correct pectus excavatum produced "no evidence demonstrating that this very remote history of prior surgery as a child causes any current significant work-related limitations."  He determined the condition was not severe.  (Tr. 33).

At step two, Claimant bears the burden of showing the existence of an impairment or combination of impairments which "significantly limits [his] physical or mental ability to do basic work activities."  20 C.F.R. § 416.920(c).  An impairment which warrants disability benefits is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 1382c(a)(1)(D).  The severity determination for an alleged impairment is based on medical evidence alone and "does not include consideration of such factors as age, education, and work experience."  Williams v. Bowen, 844

F.2d 748, 750 (10th Cir. 1988).

The burden of showing a severe impairment is "de minimis," yet the presence of a medical condition alone is not sufficient at step two. Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997); Soc. Sec. R. 85-28. A claimant must demonstrate he has a severe impairment that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(1)(D).

A claimant's testimony alone is insufficient to establish a severe impairment. The requirements clearly provide:

> An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability. Objective medical evidence of pain or other symptoms established by medically acceptable clinical or laboratory techniques (for example, deteriorating nerve or muscle tissue) must be considered in reaching a conclusion as to whether the individual is under a disability.

> 42 U.S.C.A. § 423(d)(5)(A).

The functional limitations must be marked and severe that can be expected to result in death or to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(1)(C)(i); 20 C.F.R. § 416.927(a)(1).

Claimant's treatment for chest pain caused by the condition for which he had surgery is well-documented through 2010. One of the treating physicians expressly stated that Claimant should seek less strenuous employment primarily because of the pectus excavatum surgery and the post-surgical consequences. This Court cannot conclude that this condition has no limiting effect upon Claimant's ability to engage in basic work activities. On remand, the ALJ shall re-evaluate whether this condition constitutes a severe impairment and the effect upon his ability to work.

**Credibility Analysis**

The ALJ determined that Claimant was not credible in his statements of limitation. He determined that no objective evidence verifies Claimant's assertions of limitation. This statement as a basis for rejection of Claimant's statements is improper. McAfee v. Barnhart, 324 F.Supp. 2d 1191, 1200 (D.Kans. 2004). The fact no one observed and testified as to Claimant's stated limitations does not allow an ALJ to discount the statements. Moreover, the ALJ has utilized the too often phrase which indicates that the RFC was reached prior to evaluating Claimant's statements rather than considering the statements as a part of the evidence in arriving at

an RFC. (Tr. 36). This is not appropriate and should not be employed in the future.

Claimant testified that his chest pain lasts a few days if he aggravates it. His ability to reach is restricted. The pain lasts all day. He takes hydrocodone Lortab for treatment but it does not stop the pain. He only sleeps for a couple of hours. He lies down about three hours per day and sits five to six hours a day in a recliner. Driving without a license, he does the grocery shopping twice per month. He needs help washing his feet and putting his shoes and socks on. Claimant testifies that he is tired all of the time. He has problems with memory and concentration such that he cannot watch television without getting lost in the story. His wife administers his medication due to his memory problems. He states he suffers from social anxiety where he generally dislikes everyone and experiences paranoia. He also experiences panic attacks in the grocery store. Claimant also testified to suicidal thoughts and stated he has had inpatient care twice for those thoughts as well as one occasion of inpatient care for attempting suicide. He takes medication for bipolar disorder, panic attacks and anxiety as well as sleep medication. He testified that he can sit in a straight chair for just a few minutes but can sit in a recliner with his feet up for up to an hour. Claimant stated he can stand for about 20-30 minutes. He can walk about a block. He could not lift and carry five pound bags of sugar every 10 minutes

11

in a day due to his back and chest pain. He cannot bend over or climb stairs without stopping. (Tr. 57-69).

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3. It must be noted that the ALJ is not required to engage in a "formalistic factor-by-factor recitation of the evidence." Qualls v. Apfel, 206

12

F.3d 1368, 1372 (10th Cir. 2000).  The ALJ routinely discarded Claimant's statements as being not credible based upon his perception of "[C]laimant's long history of legal problems and drug abuse" rather than whether the statements are supported or supportable by objective medical evidence.  On remand, the ALJ shall make the necessary affirmative linkage between his findings on credibility and the medical record.

### Consideration of a Listing

Claimant contends the ALJ should have found his history of major depression and bipolar disorder met Listing 12.04.  The ALJ found Claimant did not satisfy the paragraph B criteria for the listing in that he was not markedly limited in at least two of the functional areas.  This Court has reviewed the mental health reports of Dr. Patrick Martin, Ms. Tori White, Claimant's counselor, Dr. Robert Spray, and Dr. Terry Hoyt.  Dr. Spray's and Dr. Hoyt's reports were not available to the ALJ but were submitted to the Appeals Council which found no basis to alter the ALJ's decision in considering these additional reports.  (Tr. 2).

Serious consideration should be given to the reports and functional limitation opinions of Dr. Spray and Dr. Hoyt as they appear to find "severe" or "marked" limitations in many of the broad functional areas in the paragraph B criteria.  (Tr. 15-26). On remand, the ALJ shall consider these additional reports and set forth the effect the limitations found by these professionals upon

13

his determination that Claimant did not meet Listing 12.04.

## RFC Determination

Since this Court has determined that further consideration must be given to Claimant's limitations and additional impairments, the ALJ shall reassess his RFC determination and modify it to conform to the evidence.

## Step Five Analysis

Claimant contends the ALJ posed improper hypothetical questions to the vocational expert which did not include all of his limitations. On remand, the ALJ shall reformulate his questions to conform to the functional limitations that he finds after evaluating the evidence.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will

14

preclude appellate review of this decision by the District Court based on such findings.

DATED this 13th day of September, 2013.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE